# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SCOTT KECK, an individual, and ARWEN KECK, an individual, <br><br> Debtors. <br><br> WANKE, INDUSTRIAL, COMMERCIAL, RESIDENTIAL, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> SCOTT KECK, an individual, and ARWEN KECK, an individual, <br><br> Defendant-Appellees. | Case No. 18-cv-01108-BAS-BLM <br><br> **ORDER:** <br><br> **(1) REVERSING AND REMANDING THE BANKRUPTCY COURT'S ORDER DISMISSING ARWEN KECK;** <br><br> **AND** <br><br> **(2) AFFIRMING THE BANKRUPTCY COURT'S ORDER AND DECISION FINDING SCOTT KECK'S DEBT DISCHARGEABLE** |

On May 31, 2018, Plaintiff–Appellant Wanke, Industrial, Commercial, Residential, Inc. ("WICR") appealed the bankruptcy court's decisions to grant Defendant-Appellee Arwen Keck's motion to dismiss WICR's amended complaint without leave to amend as against her, and to discharge the debt against Defendant-Appellee Scott Keck after a trial on the merits. After reviewing the parties' briefing and the record, this Court **REVERSES AND REMANDS** the bankruptcy court's Order Dismissing Arwen Keck and **AFFIRMS** the bankruptcy court's Order and Decision Finding Scott Keck's Debt Dischargeable.

## I. BACKGROUND

Scott Keck is a former employee of WICR who left to form his own company in early 2008 that directly competed with WICR. (Order Granting Def. Arwen Keck's Mot. to Dismiss ("Order Re: Mot. to Dismiss") at 2, ECF No. 7-11.) Scott and Arwen Keck, who are married, are sole shareholders of the new company and were employed full-time as employees of that company. (*Id.* at 2.)

In late 2008, WICR sued Scott Keck in state court for violating a confidentiality agreement he signed while employed by WICR.[1] (*Id.*; Appellant's Br. at 4, ECF No. 18.) WICR alleged that Scott Keck and his business partner, Jacob Bozarth, misused and misappropriated confidential documents and trade secrets, specifically customer information. (Appellant's Br. at 4.) The parties entered into a settlement agreement that included entry of a Stipulated Permanent Injunction prohibiting Scott Keck and Bozarth from having contact with certain WICR customers for 18 months.[2] (Ex. A ("Injunction") to Settlement and Mutual General Release Agreement ("Settlement"), ECF No. 7-20.) The Injunction provided for liquidated damages in the event either Scott Keck or Bozarth violated the terms of the Injunction.[3] (*Id.*)

Scott Keck and Bozarth thereafter violated the Injunction by communicating with a customer covered by its terms, Con Am. (Appellant's Br. at 4.) In its Statement of Decision following Scott Keck's contempt trial, the Superior Court of California concluded that although both defendants had knowledge of the Injunction, had the ability to comply with

---

[1] *Wanke Industrial, Commercial, Residential, Inc. v. Scott Keck*, Case No. 37-2008-00097163-CU-BC-CTL (San Diego Super. Ct. Dec. 2, 2008).

[2] The Injunction was entered as a final judgment by the state court at the parties' request. (Statement of Decision at 3, ECF No. 7-19.)

[3] The liquidated damages provision states, in relevant part:

> [T]he Court shall award WICR liquidated damages against said Defendants in the amount of Fifty Thousand Dollars ($50,000) for the initial violation of any provision of this Order, with the amount of such liquidated damages increasing in increments of Ten Thousand Dollars ($10,000) for each subsequent violation of any provision of this Order, plus WICR's actual attorneys' fees, costs and expenses incurred in connection with such enforcement motion or other action . . . .

(Injunction at 3.)

the Injunction, and had willfully disobeyed its mandate, the injunction itself was unenforceable and, as such, no damages could be awarded. (Statement of Decision at 13–19, 28.) However, the California Court of Appeal partially reversed this decision, finding the Injunction valid under California law and remanding with instructions to determine damages. *See Wanke, Indus., Commercial, Residential, Inc. v. Keck*, 209 Cal. App. 4th 1151, 1177–1181, *as modified on denial of reh'g* (Oct. 29, 2012). The trial court ultimately entered a $1,190,929.65 joint and several judgment in WICR's favor on February 1, 2013. (Decision and Order Finding Debt Dischargeable ("Order") at 5, ECF No. 8-17.)

In 2014, Scott and Arwen Keck filed for bankruptcy under Chapter 7, scheduling a $1,350,911.56 debt owed to WICR.[4] (*Id.* at 5.) WICR filed the underlying adversary proceeding against them on October 6, 2014, "seek[ing] to find the state court judgment against Scott Keck non-dischargeable under 11 U.S.C. § 523(a)(6)."[5] (*Id.*; First Am. Compl., ECF No. 7-2.) This section prohibits discharge of debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). WICR's claim was based on courts' previous, unchallenged conclusions "that the actions of Scott Keck in violating the injunction and breaching the settlement agreement with WICR were willful and malicious." (First. Am. Compl. ¶ 28.) WICR further alleged that Arwen Keck "knew or should have known" about her husband's acts and that they violated the terms of the Settlement and Stipulated Injunction, "but nevertheless explicitly or implicitly approved and/or ratified some or all of those acts and accepted the monetary benefits . . . for the ultimate benefit of both Debtors." (*Id.* ¶ 23.)

### A. Decision Dismissing Arwen Keck

On February 12, 2015, Arwen Keck moved to dismiss WICR's First Amended Complaint as to herself. (Mot. to Dismiss First Am. Compl. as to Arwen Keck ("Mot. to Dismiss"), ECF No. 7-3.) She argued that she was not a proper party to the action because

---

[4] *In re Scott Keck and Arwen Keck*, Case No. 14-05289-CL7 (Bankr. S.D. Cal. June 30, 2014).

[5] *Wanke, Industrial, Commercial, Residential, Inc.* v. *Scott Keck, et al.*, Case No. 14-90191-CL (Bankr. S.D. Cal. October 6, 2014).

she had not been named in the state court decision, Settlement, or Injunction in the 2008 civil case before the Superior Court. (Mot. to Dismiss at 4.) Further, Arwen Keck stated that while the community estate of both her and her husband may be liable for the debt incurred as a result of the judgment, "this does not impute liability to the separate property of the spouse that did not incur the debt." (*Id.*) Lastly, Arwen Keck alleged that even if she had been aware and approved of Scott Keck's violation of the Injunction, this was not an affirmative act sufficient to establish nondischargeability against her for willful and malicious injury under § 523(a)(6). (*Id.* at 3, 5.)

The bankruptcy court granted the motion, finding that WICR's claim against Arwen Keck was barred by principles of claim preclusion because: (1) WICR's bankruptcy petition against Arwen Keck involved the same cause of action as WICR's state lawsuit against Scott Keck; (2) the state court judgment against Scott Keck in the first lawsuit was final; and (3) the party to be precluded, WICR, was a party to the first lawsuit. (Order Re: Mot. to Dismiss at 4–5 (citing *San Diego Police Officer's Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009)).)

### B. Order and Decision Finding Scott Keck's Debt Dischargeable

After Arwen Keck was dismissed, the bankruptcy proceeding continued against Scott Keck. To resolve WICR's summary judgment motion on its § 523(a)(6) claim, the court held two evidentiary hearings to resolve the factual question of "whether Defendant subjectively believed that his conduct, which led to the State Court Judgment, was prohibited by the Stipulated Injunction."[6] (Order at 8.) The court denied summary

---

[6] Scott Keck and Jacob Bozarth testified in the first hearing. The bankruptcy court issued an order after this hearing finding that Scott Keck did not act with subjective knowledge that his dealings were prohibited by the Injunction, partly based on Scott Keck's testimony that he relied on the erroneous advice of his attorney, Jonathan Preston, that the Injunction was void against public policy. (Order After Trial, ECF No. 8-4.) WICR then requested to reopen evidence to take Preston's deposition in light of Scott Keck's waiver of attorney-client privilege at the evidentiary hearing. (ECF No. 8-6.) The Court granted WICR's request and stated its intent to "issue a revised order after trial." (ECF Nos. 8-7, 8-8.) A second hearing was held during which Preston's deposition testimony was received as direct testimony. (ECF No. 8-12.) However, in its revised order, the bankruptcy court found that the question of Scott Keck's subjective belief was a factual matter that should "be reserved for the final trial[,]" effectively vacating its previous finding about Scott Keck's subjective knowledge in its Order After Trial. (*Id.*)

judgment on the issues of willfulness, malice, and damages, because of factual disputes regarding Scott Keck's subjective beliefs, whether he acted with just cause or excuse by relying on his attorney's advice, and what damages, if any, accrued to WICR as a result of his conduct. (Order on Summ. J. at 8–11, ECF No. 8-13.) After a trial, the court found on May 15, 2018 that WICR failed to demonstrate willfulness, malice, causation, and damages under § 523(a)(6) and ordered the debt discharged. (Order at 18–19.)

## II. LEGAL STANDARD

District courts have jurisdiction to hear appeals from final orders and judgments of bankruptcy judges who serve in the same judicial district. 28 U.S.C. § 158(a). District courts review bankruptcy courts' interpretations of law de novo and findings of fact for clear error. *In re Meruelo Maddux Properties, Inc.*, 667 F.3d 1072, 1076 (9th Cir. 2012). Mixed questions of law and fact are reviewed de novo. *Hamada v. Far E. Nat'l Bank (In Re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002). A district court "must defer to the bankruptcy court's conclusion that the discharge should be denied unless its factual findings are clearly erroneous or it applies the incorrect legal standard." *In re Cox*, 904 F.2d 1399, 1401 (9th Cir. 1990).

A bankruptcy court's conclusions of law regarding nondischargeability are reviewed de novo. *In re Ehrle*, 189 B.R. 771, 774 (B.A.P. 9th Cir. 1995). Courts also review de novo the bankruptcy court's application of the legal standard to determine whether a debt is dischargeable as a willful and malicious injury. *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002). "A more deferential standard of review is applied to a bankruptcy court's decision on dischargeability." *In re Felton*, 197 B.R. 881, 886 (N.D. Cal. 1996); *see also In re Young*, No. EDCV 11-1628-GW, 2012 WL 5834180, at *3 (C.D. Cal. Nov. 13, 2012) (giving "great deference" to the bankruptcy court's findings of fact because they "were made after a full adversary trial").

## III. ANALYSIS

WICR challenges two decisions by the bankruptcy court: (1) the dismissal of Arwen Keck from the nondischargeability action; and (2) the Order discharging Scott Keck's debt.

As explained below, the Court vacates the bankruptcy court's decision to dismiss Arwen Keck and remands for further proceedings, and affirms the bankruptcy court's decision to discharge Scott Keck's debt.

**A.  Order Dismissing Arwen Keck**

As to the order granting Arwen Keck's Motion to Dismiss, WICR alleges on appeal that the bankruptcy court misinterpreted the law in three ways: (1) Supreme Court precedent prohibits a debtor from invoking claim preclusion as a defense to a nondischargeability action; (2) state law does not support the court's conclusion that the failure to name a second co-obligor in a first action bars a later action against the second co-obligor; and (3) the court misapplied claim preclusion and actually applied issue preclusion to bar claims against Arwen Keck, which cannot apply under the circumstances in this case. (Appellant's Br. at 6–7, 9.)  The Court addresses each argument in turn below.

1.  *Brown v. Felsen*

WICR argues that the application of claim preclusion by Arwen Keck in a nondischargeability action is directly contrary to the Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127 (1979).  In *Brown*, the petitioner alleged that an outstanding debt was a product of the respondent debtor's fraud and thus non-dischargeable under the Bankruptcy Act, and respondent claimed that because the prior state court proceeding did not result in a finding of fraud, this issue was barred before the bankruptcy court by res judicata. *Id.* at 129.  The Supreme Court found that res judicata did not apply to bar the claim, holding that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Id.* at 138–39.

The bankruptcy court found *Brown* inapplicable because Arwen Keck was not arguing, as the respondent in *Brown* had, that the state court had already determined the specific nondischargeability issue—fraud—that was raised before the bankruptcy court. (Order Re: Mot. to Dismiss at 3.)  Rather, the bankruptcy court distinguished this from

Arwen Keck's position that "there [was] no debt or judgment to be found non-dischargeable[.]" (*Id.*)

The bankruptcy court's legal distinction between the instant action and *Brown* was correct. Arwen Keck did not argue that the state court judgment was preclusive because it determined that the debt fell within one of the exceptions to discharge; rather, she challenges the premise that a debt against her exists at all since she "was never named in any of the legal proceedings WICR has undertaken to enforce its claims and she was not found liable <u>at the state court level</u>." (Mot. to Dismiss at 7 (emphasis in original).) The existence of a debt is an issue independent from the dischargeability of that debt. *See In re Roberts*, No. 15-22434-B-7, 2017 WL 2779625, at *5 (Bankr. E.D. Cal. June 26, 2017) ("A non-dischargeability action involves two separate and distinct causes of action: 'one is on the debt, as determined by state law, and the other is on the dischargeability of that debt, as determined by federal law.'") (quoting *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 93 (9th Cir. B.A.P. 2000)); *see also In re Ozai*, 34 B.R. 764, 766 (B.A.P. 9th Cir. 1983). *Brown* did not concern the existence of a debt, but instead "refused to allow the principle of res judicata to bar the bankruptcy court from looking beyond the state court judgment to determine whether the debt came within one of the exceptions to discharge[.]" *In re Comer*, 723 F.2d 737, 739 (9th Cir. 1984)); *see also In re Gens*, No. 15-BK-53562, 2018 WL 4353086, at *8 (N.D. Cal. Sept. 12, 2018) (holding that the rule barring res judicata articulated in *Brown* is not applicable when a party's claims do not implicate the bankruptcy court's exclusive jurisdiction to determine dischargeability, but instead turn on some other element of the law). Thus, *Brown* is inapposite to the issue before the Court.

2. <u>State Law</u>

Second, WICR argues that, under California law, a judgment against Scott Keck does not terminate its claim against Arwen Keck, who WICR seeks to hold equally liable for its injury. Specifically, WICR cites § 910(a) and § 1000 of the California Family Code, both

of which concern the satisfaction of a liability by the community estate.[7]

WICR's argument conflates the individual liability of a spouse with community estate liability. Sections 910 and 1000 concern the latter, neither of which establish that a spouse to a judgment debtor is also liable as a debtor. *See StorageCraft Tech. v. Kirby*, No. 13-MC-315-L MDD, 2014 WL 2587493, at *3 (S.D. Cal. June 10, 2014) ("In the case of an intentional tort, a judgment creditor may collect from the community property of the judgment debtor, even if the judgment debtor's spouse was not a party to the initial lawsuit.") (citing Cal Fam. Code § 1000); *see also Xueying Zhai v. Hongjie Zhang*, No. CV 2:17-4946-SJO (RAOx), 2018 WL 6137609, at *3 (C.D. Cal. Nov. 5, 2018) (§ 910 does not require a complaint to name a non-debtor spouse, who can be dismissed as a nominal defendant).

However, here, the issue is not whether WICR can seek to satisfy the liability from the community estate, but whether the state court found Arwen Keck individually liable for the misconduct underlying the judgment. These are distinct issues not addressed by the provisions of the California Family Code cited by WICR. *See U.S.A. v. Phu Tan Luong*, No. CV 07-00202-CJC (MLGx), 2007 WL 9753000, at *1 (C.D. Cal. June 5, 2007) ("Upholding a writ of garnishment on what the government believes to be community property, however, is not equivalent to holding [a spouse] liable.").[8]

---

[7] *See* Cal. Fam. Code § 910(a) (the debts of either spouse incurred before or during the marriage may be satisfied from the community estate "regardless of whether one or both spouses are parties to the debt or to a judgment for the debt"); Cal Fam. Code § 1000(b)(1) (in the case of death or injury to a person or property, the liability of a married person is first satisfied from the community estate and second from separate property if his or her liability "is based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community"); *see also In re Deitz*, No. 08-13589-B-7, 2013 WL 2303790, at *3 (Bankr. E.D. Cal. Feb. 22, 2013).

[8] A different provision of the code governs individual liability, stating that "[a] married person is not liable for any injury or damage caused by the other spouse except in cases where the married person would be liable therefor if the marriage did not exist." Cal. Fam. Code § 1000(a). This provision determines only the individual liability of one spouse for the wrongful acts of another; "it is not dispositive as to how community property may be used to satisfy debts incurred by those wrongful acts." *Griggs v. Strumpfer*, No. CVF 05-1313RECSMS, 2006 WL 1523124, at *3 (E.D. Cal. May 30, 2006). WICR itself appears to acknowledge this distinction without affording it meaning. (*See* Appellant's Reply Br. at 2 ("In California, one spouse (or at least that spouse's interest in the community property), is liable for a tort committed by the other spouse . . . .").)

WICR also cites to the Second Restatement of Judgments to support the notion that "a judgment against one person liable for a loss" does not terminate a claim against another person who may be liable or result in a merger or bar of the claim against another obligor. (Appellant's Br. at 8–9.) The Court finds this legal principle similarly inapplicable here. Arwen Keck does not argue that the state court judgment against her husband terminated, merged, or barred the nondischargeability of debt claim against her before the bankruptcy court. Rather, she claims that because the state court judgment was entered against only her husband, it established the underlying debt necessary for the nondischargeability proceeding against only her husband. As against Arwen Keck, there is no debt to be found dischargeable.

### 3. Claim and Issue Preclusion

Lastly, WICR argues that the bankruptcy court erroneously applied claim preclusion to dismiss Arwen Keck because WICR did not name Arwen Keck as a defendant in the state court action. Moreover, WICR contends that even under the correct test, issue preclusion, it was not barred from making this argument before the bankruptcy court. (Appellant's Br. at 9–10.)

#### (a) *The applicable preclusion doctrine*

Courts have held that stipulated state court judgments do not have a claim preclusive effect on nondischargeability proceedings because nondischargeability claims are independent of the underlying claims resolved by a stipulated agreement and cannot, therefore, be precluded by one. *See In re Yaikian*, 508 B.R. 175, 179 (Bankr. S.D. Cal. 2014) (finding that claim preclusion did not apply because "[n]ondischargeability claims are separate from the fraud and breach of contract claims resolved by a stipulated judgment") (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)). However, "[p]rinciples of collateral estoppel [or issue preclusion] apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a)." *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001) (applying five elements of California's issue preclusion doctrine to determine whether issue of debtor's fraudulent conduct in nondischargeability proceeding was

precluded by a state court judgment); *see also Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 92 (B.A.P. 2000); *In re Yaikan*, 508 B.R. at 179 (citing *Groger*, 498 U.S. at 284 n.11). WICR is therefore correct that the bankruptcy court erroneously applied claim preclusion when it should have applied issue preclusion.

       (b)  *The preclusive effect of the judgment on Arwen Keck*

"For issue preclusion to apply to a California judgment, five elements must be met: (1) identical issues decided in the prior proceeding; (2) the issues were actually litigated; (3) the issues were necessarily decided; (4) the prior proceeding ended in a final decision on the merits; and (5) the party to be precluded must be identical to or in privity with a party in the prior proceeding." *In re Zeeb*, No. 8:13-AP-01301-CB, 2019 WL 3778360, at *7 (B.A.P. 9th Cir. Aug. 9, 2019) (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)). To apply issue preclusion principles, bankruptcy courts necessarily must "discern what exactly was decided by the state court judgment, and then to give it effect." *Id.* If there is "[any] reasonable doubt as to what was decided by a prior judgment," a bankruptcy court should resolve the issue "against allowing the [issue preclusive] effect." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996).

The issue here is whether Arwen Keck, a nonparty to the Injunction, can still be held liable for violating the Injunction and for the corresponding liquidated damages by "explicitly or implicitly approv[ing] and/or ratif[ying]" Scott Keck's own violative conduct. (First Am. Compl. ¶ 23.) If resolved in the affirmative, WICR can state a debt against Arwen Keck in the nondischargeability proceeding against her that is the subject of this appeal. If not, however, WICR cannot so state and, as such, cannot maintain the nondischargeability proceeding against her.

WICR is correct that issue preclusion does not bar its attempt to establish the debt against Arwen Keck in the nondischargeability proceeding because at least three of the five issue preclusion factors do not appear to be met.[9] Because Arwen Keck was not a party to

---

[9] Bankruptcy courts have the constitutional authority to determine the existence of a debt as a part of a nondischargeability proceeding. *See Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1016–18 (9th

the state court action, the specific issue of whether she personally violated the Injunction and thus owed liquidated damages to WICR was not identical to any issues decided in the contempt proceeding against Scott Keck and Jacob Bozarth, was not actually litigated in that action, and was not necessarily decided by the state court. For this reason, WICR's successful contempt action against Scott Keck in state court does not prevent it from seeking relief from Arwen Keck for the same debt. *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 827 (2015) (holding that "issue preclusion cannot be used to prohibit [a party] from seeking redress from a different obligor just because it has *prevailed* against a different party in the first suit") (emphasis in original).

Thus, collateral estoppel cannot apply to bar these issues from being considered in Arwen Keck's nondischargeability proceeding. Absent the availability of preclusion in this case,[10] it is necessary to determine whether Arwen Keck owes WICR an underlying debt that can properly form the basis for a nondischargeability proceeding. This in turn requires a determination of whether Arwen Keck was bound by the terms of the Injunction and, if so, whether her actions violated the Injunction. The Court recognizes that Arwen Keck, as a non-party to the state court action, may be found not be subject to the Injunction at all. However, the Court remands to the bankruptcy court to address these questions in the first instance.

**B.     Order and Decision Finding Scott Keck's Debt Dischargeable**

WICR next challenges the bankruptcy court's decision to discharge the liquidated damages owed by Scott Keck for violating the Injunction, arguing that the damages are

---

Cir. 1997) (finding that bankruptcy court had jurisdiction to adjudicate issues of liability and damages and enter judgment on that debt where there was no prior state court judgment fixing liability); *In re Ward*, No. ADV. 06-90114, 2008 WL 8462955, at *4 (B.A.P. 9th Cir. June 3, 2008) (finding that the bankruptcy court had the power to hear and determine the existence of a debt in addition to determining whether that debt was dischargeable), *aff'd*, 351 F. App'x 179 (9th Cir. 2009) (citing *Sasson v. Sokoloff*, 424 F.3d 864, 868 (9th Cir. 2005) and *In re Kennedy*). In any event, neither party raises a jurisdictional challenge to the bankruptcy court's ability to determine the validity and amount of its claim against Arwen Keck.

[10] The parties do not raise any other legal theory to support WICR's inability to initiate the instant nondischargeability action against Arwen Keck due to its failure to name her in the state court lawsuit. Thus, the Court does not address any such arguments on appeal.

- 11 -

18cv1108

nondischargeable because they were incurred as a result of Scott Keck's "willful and malicious injury" to WICR. *See* 11 U.S.C. § 523(a)(6). Under § 523(a)(6), "[a] creditor must prove both willfulness and maliciousness to prevail in a nondischargeability proceeding . . . ." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).

WICR argues that the bankruptcy court's decision to discharge the debt was based on erroneous findings that WICR did not prove that Scott Keck's conduct was willful or malicious or that WICR suffered injury as a result. (Appellant's Br. at 13.) Central to these errors, according to WICR, was that the court reached several conclusions in its final order that were contradicted by its decision on summary judgment or by the state court, and that the court failed to give proper legal effect to the liquidated damages clause in the Injunction. (*Id.* at 12–13.) The Court addresses each alleged error in turn below.

1. <u>Willfulness</u>

"[T]he willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1208 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001). Willfulness can therefore be established by proving either the debtor's subjective state of mind or objective belief of substantial certainty. *See In re Su*, 290 F.3d 1140, 1145 (9th Cir. 2002). "The objective test is broader than the subjective one, allowing nondischargeability either with subjective intent/knowledge or with objective substantial certainty." *Id.* Willfulness exists only when the debtor intends the consequences of the action and not just the action itself. *In re Thiara*, 285 B.R. at 427.

The bankruptcy court found no support for a willfulness finding under either the subjective or objective tests. It stated that WICR "provided precious little evidence of [Scott Keck's] state of mind and motivation" to prove his subjective intent to harm WICR. (Order at 17.) Instead, the court found that the record supported that Scott Keck engaged in business with a prohibited customer "because he wanted it for himself – without regard

- 12 -

to its impact on [WICR]." (*Id.* at 16.) The court also found no evidence, under the objective standard, that Scott Keck knew his contacts with customers were substantially certain to cause WICR harm. (Order at 17.)

WICR argues that this willfulness finding is contradicted by another order issued by the bankruptcy court in this proceeding, by the testimony of Scott Keck and Jacob Bozarth, and by the existence of the liquidated damages provision.

Two of these arguments are simply erroneous. First, although the bankruptcy court did previously state that the liquidated damages provision could "satisf[y] the requirement of substantial likelihood of injury[,]" the court stated such before holding two evidentiary hearings and reopening a deposition, after which the court reserved judgment on the question of Scott Keck's subjective belief until after trial.[11] (Dec. 12, 2016 Min. Order, ECF No. 8-1; Order Following Reopened Evidentiary Hr'g, ECF No. 8-12.) This was not the court's final determination on the issue of willfulness; rather, the court made this determination in its Order and Decision after trial, which stated that Scott Keck "did not subjectively intend to injure [WICR] or act with knowledge that injury was substantially certain to occur." (Order at 17–18.)

Second, the deposition testimony of Jacob Bozarth and Scott Keck cited by WICR does not undermine the court's willfulness finding. Bozarth testified that he and Scott Keck understood that if they "broke any of these binding terms [of the Injunction], there would be a financial amount that would be set to each one of these broken terms." (Dep. of Jacob Bozarth at 96:19–22, ECF No. 15.) While this speaks to Scott Keck's understanding of the arrangement, it does not speak to his subjective or objective belief or knowledge at the time he violated the Injunction. WICR fails to address the critical missing link in this argument.

Scott Keck's testimony presents a closer question. He testified that he understood that if his company "got a contract from one of those entities that was on the injunction, that obviously [WICR] could not" enter into that same contract. (Dep. Of Scott Keck

---

[11] *See* footnote 6, *supra*.

- 13 -

("Keck Dep."), 55:16–20, ECF No. 14.) Scott Keck appears to concede that he knew that his business and WICR, by virtue of performing the same service, were engaged in a zero-sum game, suggesting he could have been substantially certain that harm would accrue to WICR at the time he violated the Injunction.

However, the bankruptcy court noted the unique circumstances of Con Am's relationship with WICR and Scott Keck at the time of the violation weighed against a finding that Scott Keck was necessarily substantially certain that his actions would cause WICR harm. Specifically, the court noted that the customer, Con Am, was not doing business with WICR around the time it contacted Scott Keck, and that "Con Am had reached out to [Scott Keck] and solicited *him*." (*Id.*; *see also* Keck Dep. 48:21–49:18.) Further, WICR failed to show that it would have secured Con Am's business if Scott Keck had not, such that any injury to WICR could not be said to be "substantially certain." (Order at 17.) WICR does not dispute these facts, and the Court finds no error in the bankruptcy court's conclusion. *See In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013) ("If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous.") (citing *Price v. Lehtinen (In re Lehtinen )*, 332 B.R. 404, 411 (9th Cir. B.A.P. 2005)).

Lastly, WICR contends that the liquidated damages provision "resolves all issues of causation" raised by the bankruptcy court. WICR relies on a contract proposition that the liquidated damages provision, stipulated to by both parties, means the parties have agreed to the amount of damages and "have likewise agreed that the prohibited conduct has caused those damages." (Appellant's Br. at 14.) This argument misses the mark. The bankruptcy court did not question whether Scott Keck's "prohibited conduct" caused a violation of the Injunction, which in turn triggered liquidated damages; these are undisputed events. Instead, the question for purposes of nondischargeability is whether WICR has demonstrated that Scott Keck acted willfully, either because he had a motive to harm WICR or knowledge that substantial harm would result from his actions. The liquidated damages

- 14 -

18cv1108

provision does not, by its mere existence, resolve questions as to Scott Keck's state of mind at the time his conduct triggered it.

Accordingly, the Court affirms the bankruptcy court's conclusion that WICR failed to prove willfulness under § 523(a)(6).

### 2. Malice

Maliciousness under § 523(a)(6) requires a (1) wrongful act, (2) done intentionally, (3) which necessarily causes injury and (4) is done without just cause or excuse. *In re Jercich*, 238 F.3d at 1208. The bankruptcy court found that WICR failed to prove that Scott Keck acted intentionally and necessarily caused injury because it did not demonstrate that Scott Keck subjectively intended to harm WICR. (Order at 17.) WICR argues that the bankruptcy's courts finding contradicts its previous findings and that it is erroneous because "the inclusion of a liquidated damages clause in the Injunction and the state court's express finding that Scott Keck knew of the injunction's terms satisfies" the element of intentionality. (*Id.*)

As to the contradictory finding, WICR cites to the bankruptcy court's statement in its Order that it had "already concluded that [Scott Keck] committed intentional, wrongful acts." (Order at 16.) The Court understands this to refer to the court's Order on Summary Judgment, which held that the state court judgment's finding that Scott Keck violated a lawful court order satisfied the "wrongful act" element of malice under § 523(a)(6). (Order On Summ. J. at 9.) However, the court expressly denied summary judgment on the two remaining elements of malice, intention and causation; thus, the Court finds no merit to WICR's claim that the bankruptcy court contradicted itself. (*Id.*)

WICR also argues that the bankruptcy court incorrectly required specific intent to injure, contrary to *In re Cecchini*, 780 F.2d 1440 (9th Cir. 1986). WICR misinterprets precedent. The Ninth Circuit has held more recently that the Supreme Court's decision in *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57 (1998), "made clear that for section 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself." *In re Ormsby*, 591 F. 3d at 1206. In other words, Scott Keck not only had to intend

- 15 -

to enter into a business relationship with a WICR customer, which he undoubtedly did, but had to do so with the intent of taking business from WICR. The bankruptcy court found that WICR had failed to make this showing, and WICR fails to present any argument to the contrary on appeal.

Lastly, WICR argues that "Scott Keck's agreement to the inclusion of a liquidated damages clause in the injunction and the state court's express finding that Scott Keck knew of the injunction's terms" proves the intent to harm WICR. Again, however, the mere existence of the liquidated damages provision agreed to by Scott Keck does not reflect that he acted with the requisite intent for nondischargeability under § 523(a)(6). (*See* Section III.B.1, *supra*.) Scott Keck's awareness of and agreement to the liquidated damages provision does not demonstrate that he knew, at the time of his violative conduct, that he was in breach of the Injunction, let alone that he intended to harm WICR by doing so. The Court therefore also affirms the bankruptcy court's legal conclusion that WICR did not prove that Scott Keck acted with malice.

### 3. Damages

WICR again contends that the liquidated damages provision sufficiently states its damages. (Appellant's Br. at 16–17.) The bankruptcy court also found that the liquidated damages owed by Scott Keck were insufficient to show, by a preponderance of the evidence, proof of damages incurred by WICR as a result of Scott Keck's actions. (Order at 18.) The court found the damages were "in essence a contract measure" that did not satisfy WICR's burden, and were not a reasonable estimate of loss. (*Id.*)

The court's analysis was correct. Bankruptcy courts in nondischargeability actions must first determine whether liquidated damages are enforceable under California law before awarding them. *In re Arciniega*, No. AP 6:11-AP-01735-SY, 2016 WL 455428, at *11 (B.A.P. 9th Cir. Feb. 3, 2016) (defining debts under § 523(a)(6), including liquidated damages, as "nothing more nor less than an enforceable obligation"). In California, a liquidated damages provision is enforceable only if it is a reasonable estimate of the actual damages. Cal. Civ. Code § 1671(b); *Ridgley v. Topa Thrift and Loan Assoc.*, 17 Cal. 4th

970, 977 (1998) ("The amount set as liquidated damages must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained."). The bankruptcy court found insufficient evidence of lost profits such that it could make this determination.

In any event, because the Court finds no error in the bankruptcy court's conclusion that no tortious conduct—that is, willful and malicious injury—was inflicted by the debtor, the Court need not reach the damages question at all. *See In re Arciniega*, 2016 WL 455428, at *11 ("[L]iquidated damages based on a mere breach of contract, even an intentional breach, are not excepted from discharge under § 523."); *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992) (damages for breach of contract, even in the case of intentional breach, are fully dischargeable unless accompanied by tortious conduct).

In sum, the bankruptcy court correctly found that WICR failed to show that Scott Keck subjectively or objectively believed he was harming WICR for purposes of willfulness, intended to harm WICR for purposes of malice, or caused WICR actual lost profits by his actions. Thus, the Court affirms the bankruptcy court's conclusion that Scott Keck's debt was dischargeable because WICR failed to carry its burden to prove willfulness and malice under § 523(a)(6).

## IV. CONCLUSION AND ORDER

Accordingly, the Court **REVERSES AND REMANDS** the bankruptcy court's Order Dismissing Arwen Keck and **AFFIRMS** the bankruptcy's court's Order and Decision Finding Scott Keck's Debt Dischargeable.

**IT IS SO ORDERED.**

**DATED: March 5, 2020**

Hon. Cynthia Bashant
United States District Judge